CASE 41—AGREED CASE BETWEEN THE COMMONWEALTH OF KENTUCKY
AND THE COVINGTON AND CINCINNATI BRIDGE COMPANY, INVOLV-
ING THE LIABILITY OF SAID BRIDGE COMPANY FOR FRANCHISE TAX
IN KENTUCKY.—DEC. 12.

# Commonwealth of Kentucky v. Covington & Cincinnati Bridge Co.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR THE BRIDGE COMPANY AND THE COMMONWEALTH OF
KENTUCKY APPEALS. REVERSED.

CORPORATIONS—INTERSTATE BRIDGE—FRANCHISE TAX—VALUATION.

Held:   1. Where, in an action involving the validity of a franchise
tax on· an interstate bridge company, there was no showing
that there was any difference in value between the part of the
bridge within the limits of one State and that within the lim-
its of the other, it will be presumed that the value of the prop-
erty in each State is in proportion to the length of the bridge
therein.

2. Where fifty-nine per cent. of the length of an interstate bridge was
within the limits of Kentucky, the valuation of the bridge com-
pany's franchise for taxation should be found by taking fifty-
nine per cent. of the total value of the stock and bonded in-
debtedness, and deducting from this amount the assessed val-
uation of the tangible property of the bridge company in Ken-
tucky.

CLEM J. WHITTEMORE, FOR APPELLANT.

This is an agreed case in which the total value of the bridge
company's property is fixed at $1,330,000, and that fifty-nine per
cent. of the bridge is in Kentucky.

Sections 4077 and 4079, Kentucky Statutes, gives the board of
assessment and valuation authority to determine the amount of
the capital stock, and expressly says this amount, less the tangi-
ble property, shall be the value of the corporate franchise.   In
this case it is agreed that the value and worth, on the market,
of the capital stock and bonded indebtedness of the bridge
company, was, on September 15, 1900, $1,330,000.  Fifty-nine
per cent. of the bridge is in Kentucky and fifty-nine per cent.
of $1,330,000 is $784,700.   The tangible property in Kentucky
is valued at $452,000.   This makes the corporate franchise in

Kentucky, $332,700. The board only fixed the value of the franchise for 1901 at $278,349, which is $54,351 less than it really should have been.

We contend that the fact that the board of valuation may have adopted an improper mode of estimating the value of appellees' franchise, will not vitiate the tax unless the result ascertained was unjust and prejudicial to appellee, and in this case, although prejudicial to appellant, the appellee and not the appellant is complaining.

We think it is clear that the State is entitled to recover the full sum claimed. Henderson Bridge Case, 166 U. S., and 99 Ky., 623.

J. W. BRYAN, ATTORNEY FOR APPELLEE.

Under the alleged assessment made by the State board of valuation and assessment of appellee's franchise for 1901, there is a balance due the State of $464.84, while appellee insists, if the assessment had been made as the courts have held was the proper way, there is nothing due; the same having been paid in full.

We contend that the board of assessment and valuation adopted an arbitrary and illegal method of estimating the value of the franchise by taking the assessed value of the capital stock of appellee for the four preceding years, to-wit, 1897, 1898, 1899 and 1900, and adding them together and taking one-fourth of the total sum, as an average, and fixing that sum as the valuation for 1901.

The proper way to ascertain the franchise tax in Kentucky was to take the whole value of the company's property, $1,330,-000, from this deduct the tangible assessment in Ohio, $237,984, leaving $1,092,016. Fifty-nine per cent of this sum is $644,289, from which deduct the tangible assessment in Kentucky, $452,-000, leaves the value of the Kentucky franchise $192,289, instead of $278,349 as fixed by the board. Henderson Bridge Co. v. Com., 99 Ky., 623, 166 U. S., 150; Louisville Ry. Co. v. Com., 20 Ky. Law Rep., 1515; Henderson Bridge Co. v. Negley, Sheriff, 23 Ky. Law Rep., 747; Paducah Street Ry. Co. v. McCracken Co., 20 Ky. Law Rep., 1294; So. Cov. & Cin. St. Ry. Co. v. Town of Bellevue, 20 Ky. Law Rep., 1509; Louisville & Jeff. Ferry Co. v. Com., 22 Ky. Law Rep., 446.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

This was an agreed case, submitted to the circuit court on the following agreement of facts:

"The defendant, the Covington & Cincinnati Bridge Com-

pany, is, and was at all times herein referred to, a corporation both in Kentucky and Ohio, it having been incorporated in Kentucky by an act of the General Assembly of the Commonwealth of Kentucky approved (10th) 17th of February, 1846, entitled 'An act incorporating the Covington and Cincinnati Bridge Company,' and having been incorporated in the State of Ohio by an act of the General Assembly of the State of Ohio approved (25th) 26th of March, 1849, entitled 'An act to confirm the charter of the Covington and Cincinnati Bridge Company,' it being specifically empowered by the said special act of the Legislature of Ohio to construct and operate a bridge over the Ohio river, from Cincinnati, in that State, to the city of Covington, in Kentucky, and to charge and collect toll from persons going on such bridge in the State of Ohio, and to purchase and hold real estate in Ohio for the purpose of said bridge, and, when the same could not be acquired by agreement, then to condemn such property in Ohio. Under the power and authority thus conferred in its charter by the Legislatures of Kentucky and Ohio, respectively, defendant constructed, and still owns and operates, a toll bridge over the Ohio river, and extending from Second Street, in the city of Cincinnati, State of Ohio, to Second street, in the city of Covington, State of Kentucky. It, on and before the 15th of September, 1900, owned the real estate therewith connected in the State of Ohio, a part of which it was compelled to and did acquire by and through condemnation proceedings under the laws of the State of Ohio in the courts of that State, in some instances going through the supreme court of Ohio. Said bridge is not, and never has been, a steam railroad bridge, but has been and is used by persons travelling on foot, horseback, and in vehicles; also by street cars. On the 15th of

September, 1900, the total length of this bridge, including approaches, which are a part thereof, was 2,720 feet. Of that there was in Kentucky (to low water mark on the Ohio side of the river) 1,604 feet, leaving 1,116 feet thereof in the State of Ohio; that is, fifty-nine per cent. in length thereof was and is in the State of Kentucky. On the 15th of September, 1900, it made a written verified statement to the auditor of public accounts, as provided by section 4078, Kentucky Statutes, a copy of which is attached hereto as part hereof, marked 'A.' On the 15th of September, 1900, the value of the capital stock of defendant was $750,000, and such amount was its worth on the market; and it then had an outstanding mortgage bonded indebtedness of $580,-000, being bonds it had issued, and which were and are bearing interest at four per cent. per annum. For the year 1900 it paid a dividend of four per cent. on its said $750,000 of capital stock, and had not paid a greater annual dividend on said stock for several years prior thereto. The value and worth on the market of its capital stock and the bonded indebtedness on the 15th of September, 1900, was $1,330.000, and no more. The Commonwealth of Kentucky assessed for taxation for the year 1901 the tangible property of defendant in Kentucky at $452,000, and it has paid its taxes thereon to the State. The State of Ohio assessed for taxation for that year that part of the defendant's bridge in that State at $237,984, and defendant has paid to the State of Ohio the taxes thereon. The board of valuation and assessment of Kentucky fixed the value of defendant's franchises for taxation by Kentucky for the year 1901 in this way, to-wit: It took what said board had fixed as the value of all defendant's property or capital stock for the preceding four years, to-wit: Capital for 1897, $902,070; capital for 1898, $693,206; capital for 1899, $663,060; cap-

ital for 1900, $663,660—and,adding these four years to-
gether, made $2,921,396, and, dividing that by four, got an
average for the four years of $730,349, and then fixed said
$730,349 as the capitalization of defendant for the year
1901, and, deducting therefrom the assessment of the tangi-
ble property in Kentucky, left $278,349 as the franchise
valuation; and, the tax rate being 47½ cents, made de-
fendant's franchise tax for 1901 $1,322.16.   Defendant, de-
nying the correctness or legality of this fixing or valuation
of its franchise, and denying the right or power of said
board to adopt such a mode or basis of arriving thereat, or
its liability for the tax claimed thereon, refused to pay said
$1,322.16; and defendant, further insisting that the correct
legal and proper valuation of its said franchise was and
would have been for said year 1901 the sum of $180,489, and
the tax it owed to the plaintiff, the Commonwealth of Ken-
tucky, thereon, was $857.32, and no more, paid in to the
auditor of public accounts the said sum of $857.32, under
an agreement that such payment of $857.32 was in no way to
affect the question of defendant's liability for said claimed
balance of $464.84, the question of such liability, and of
said assessment or valuation of defendant's franchise, and
the method or basis upon which defendant's said franchise
should be valued or fixed for taxation by said board, to be
determined by the courts. The earnings or receipts of de-
fendant's bridge in Ohio for said year 1901 were $30,871.55,
while in Kentucky they were $38,300.31. Wherefore the par-
ties presenting the questions herein made pray the judg-
ment of the court thereon, such judgment embracing and
giving such relief to the parties hereto, respectively, as
they may be entitled to receive. Robt. J. Breckinridge,
Atty. General, for plaintiff, the Commonwealth of Ken-

tucky. J. W. Bryan, Attorney for Defendant, the Covington & Cincinnati Bridge Company."

On these facts the following questions were presented to the court for decision: (1) Does the defendant (the bridge company) owe the plaintiff (the Commonwealth) the sum of $464.84, or any part thereof, on account of a tax of its franchise for the year 1901? (2) What method or basis should be adopted by the State board of valuation and assessment for fixing the value of the defendant's franchise for taxation by the Commonwealth of Kentucky? The circuit court adjudged that the board, in making the assessment, adopted an improper mode, and that the defendant, by the payment to the auditor of the sum of $857.32, had fully paid to the State the tax on its franchise for the year 1901, and owed no part of the $464.84 claimed by the State in addition to the amount which had been paid.

The court reached its conclusion by taking the total value of the bridge company's capital stock and bonded indebtedness, $1,330,00. From this amount it deducted the tangible property assessed for taxation in Ohio, $237,984, which left a balance of $1,092,016. As 59 per cent. of the bridge lay in Kentucky, and 41 per cent. in Ohio, it took 59 per cent. of $1,092,016, which is $664,289, and from this it deducted the tangible property assessed in Kentucky, $452,000, which left a balance of $192,289 as the value of the Kentucky franchise. It is insisted by the State that this is an erroneous method of arriving at the proper valuation of the franchise, for the reason that thus the bridge company is not taxed upon its entire property, and that the Kentucky authorities are not dependent upon the action of the officers of Ohio in fixing the value of the property of the bridge company. It is insisted for the State that the proper way to arrive at the valuation of the franchise is to take the

total value, $1,330,000, and get 59 per cent. of it, which is $782,700,and that this presents the total of the tangible property and of the franchise in Kentucky. Therefore, if we deduct from this total $782,700, the assessment of the tangible property in Kentucky, $452,000, the balance, $330,-700, is the value of the franchise. The board fixed the value of the franchise at $278,349, or considerably less than the result thus obtained.

It is insisted for appellee that the court below followed the case of Henderson Bridge Co. v. Com., 99 Ky., 623 (17 R., 389) (31 ·S. W., 486, 29 L. R. A., 73), and that this case has been approved in a number of subsequent opinions by this court. But that suit, and all those following it, were actions by the Commonwealth to recover taxes based on the assessment made by the board. The State was not complaining of the assessment; on the contrary, it was endeavoring to enforce it. It had no right of action except upon the assessment, and no question, therefore, could be presented by the State as to the propriety of the assessment which it sought to enforce. The bridge company resisted the assessment, and in response to this the court said at the bottom of page 642, 99 Ky., that the board followed out the line claimed by the defendant. But this action of that board did not prevent another board for any other year from adopting a different line, if the law warranted it. There is nothing, therefore, in any of these cases, determining that the board did not have the right to adopt another basis of assessment.

It is also insisted for appellee that the basis adopted by the board in this case, or the mode by which it reached its results, was erroneous. If this be conceded, still, if the result reached by the board was correct, or not more onerous on appellee than it should have been, the assessment

can not be disturbed; for no principle is better settled than that, if an officer is right in his conclusion, the fact that he gives bad reasons for it, or reached it in the wrong way, is immaterial. If we subtract from the total value of all the property of appellee the value of its tangible property; the balance represents necessarily its tangible property; and, as the Constitution requires all property within the taxing district to bear its equal part of the public burden, this intangible property, so far as it is within the State, must be taxed as other property. While it does not necessarily follow that all parts of a bridge are of equal value, still the fact remains that its whole value is due to its entirety, and that one part of the bridge is practically of no value, at least as a bridge, without the other. *Prima facie,* it should be presumed, where part of a bridge lies in Kentucky and part in another State, that the value of the structure in the two States is in proportion to the length of the bridge in each, for the value of the property depends upon its use as a bridge, and the franchise, it seems to us, must necessarily be apportioned the same way. If it should be shown that the property in the other State was of greater value per foot than the property in Kentucky, our officers are not concluded by the action of the officers of the other State, but could for themselves fix the value of the entire tangible property of the bridge, and deduct this from the total value, which was in this case $1,330,000. But, there being no showing that there was any discrepancy in value between the Kentucky end of the bridge and the Ohio end, it should be assumed, in the absence of proof, that the value of the property in Kentucky was in proportion to the length of the bridge in Kentucky. We therefore conclude that the basis urged by appellant is the proper one for the assessment of the property under the agreed

facts, and the board having fixed a lower assessment than this would make, the court erred in not enforcing the collection of the tax on the assessment made by the board; for it is easy to see that if the appellee's property is assessed in Kentucky on the line claimed by it, and also assessed in Ohio on the same line, it will escape payment of taxes on a part of its franchise; for in that event the value of its tangible property will not be subtracted from the total value of its property, but from a per cent. of it, and the balance is necessarily smaller than if the entire value of its property was taken as the basis and the value of its tangible property subtracted from it; and, if the property was so assessed in Kentucky, and not in Ohio, Kentucky would lose a part of her just revenue, although, as to Ohio, there would be no loss.

Judgment reversed, and cause remanded for a judgment in favor of the State for the amount claimed.

Petition for rehearing by appellee overruled.